FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 0 5 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

AT THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION AT LITTLE ROCK

Ambassador Mike Parsons
Petitioner

V.                    No. 2:22-CV-00098-LPR-ERE

UNITED STATES OF AMERICA and STATE OF TENNESSEE
Respondent

———————————————

MEMORANDUM IN SUPPORT OF PETITIONERS' OBJECTION TO MAGISTRATE'S RECOMMENDATION

AND

PETITION TO TRANSFER THIS MATTER TO THE SUPREME COURT FOR THE UNITED STATES

———————————————

By Special Appearance Only, I Ambassador Mike Parsons of the Tsilhqot'in Nation-Country of Chilcotin hereby present my Memorandum In Support of my Objection to the Magistrate's Recommendation in the matter and Petition to Transfer this matter to the supreme Court for the united States.

———————————————

PETITIONERS' OBJECTION TO MAGISTRATE'S RECOMMENDATION

I hereby object to the Magistrate's Background Information in it's entirety due to its' combination of unproven accusations from unidentified agents of the respondent, compounded inference and conjecture thereto that was then and now, a violation of my right to confront my accuser and correct the record.  Including the following,

1.  In paragraph (1) of the Background Information, the Magistrate falsely claims,

   "In January 2017, while on pretrial release for new state charges for being a felon in possession of a firearm, Mr. Parsons absconded, and a warrant issued for his arrest."

However, the record reflects a single charge falsely claiming Felon in Possession of a Firearm had been dismissed several times and was ultimately dismissed without a trial and subsiquently expunged from the record.' Furthermore, when I was abducted by the FBI SWAT Team for a state charge of failure to appear with machine guns pointed at my head, I was traveling in my official capacity as an Ambassador of a Foreign

———————
' See attached ORDER for EXPUNGMENT

1.

Country, using my name, in route to a long scheduled meeting to finalize a Timber Contract worth (1) Billion Dollars to the Tsilhqot'in Nation.  I had scheduled my stay at the Arapahoe Airport with the President of their Airport Authority months in advance and even spent the day prior helping the Airport Authority President move a snow plow from the town of  Arapahoe to the Airport.  Also, at the trial for the false charge of Felony Failure to appear, all (3) of the State's witnesses testified there was no Court Order, Contract or Agreement for me to appear.  Therefore, I had no obligation to appear.  In fact, the Judge in that matter manipulated the record by claiming there was no warrant for my arrest on January 12, 2017 when the FBI SWAT Team abducted me, which was done so he could deny my right to a Preliminary Hearing as required by the Tennessee Rules of Criminal Procedure.[2]  Considering the FBI claimed at Trial I was arrested by a warrant even though they had none in-hand at the time of the abduction of me, a warrant was made a part of the record for January 12, 2017 which proves the denial of the right to a Preliminary Hearing and under the Rules of Criminal Procedure that denial of Due Process renders the Failure To Appear conviction VOID. Considering these fact and Black's Law Dictionary definition of "abscond" being,

> "To depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process.

the facts prove I had not "absconded" as claimed by the Magistrate in this matter.

2.  In paragraph (2) of the Background Information the Magistrate falsely claims,

> "While fleeing Mr. Parsons piloted a small plane and he stopped at an airport in Nebraska to stay the night... The next day, he was arrested at the airport, and a search of his aircraft uncovered a firearm and ammunition."

However, no one testified they witnessed me pilot a plane and no firearm or ammunition were found on January 12, 2017 when they abducted me and originally searched the plane. It was actually 2.5 months later when the FBI searched the plane a secound time that they claimed they found a rifle and ammunition inside the aircraft that had been left unlocked inside a community hangar that the Airport Authority President stated had never been locked, that he had been inside the aircraft daily to check on the battery, which would have been behind the back seat where they claimed they found a rifle and

---

[2] See Tennessee Rules of Criminal Procedure 5(e)(1)(4), mandating dismissal of indictment.

ammunition.  And, also in the video of the Airport Authority President Mr. Todd
Weverka, he admits that another pilot had actually accessed my plane several times to
move it out of the hangar so he could access his plane.  Again, this was a community
hangar in a remote location with not fence, no security guard and no survealance
camera during the time my plane was there from January 11, 2017 until after it was
searched a second time 2.5 months later.

3.   In the Background Information the Magistrate failed to acknowledge that,

    (a)  I testified that I was not a prohibited person and had no knowledge of such
        a status, but was a live man who possessed and exercised all of my God-given
        rights;  Including the right of necessity to self-defense and self-determination.

    (b)  I testified I had never been convicted of a felony, asserted I was not the
        juristic or artificial person listed in the indictment, nor was I a faduciary,
        surity, trustee or any other type or form of acceptor thereto.  And knowing
        that due to the Statutory requirement that before any prior conviction applies,
        I would have had to been represented by counsel at trial or waived my right to
        counsel, which is a required element for 18 USC §922(g)(1), as specified in
        18 USC §921(a)(33)(B)(i)(I), and as such, I was not a felon.

    (c)  I testified that I did not possess a firearm on that day when I was abducted,
        and that to my knowledge the rifle appeared to be one I had given to a friend
        of 30 years in 2007 for work he had done at my farm.  And due to the Court-
        Appointed Attorney who had made no preperations for the trial and refused to
        ask the question,  I was denied the right to render my opinion that the
        rifle and ammunition was either planted in the plane by agents of the
        respondent in order to frame me or perhaps my friend who not only had the
        rifle but had inspected the plane prior to my purchase of it and he had a key
        to the plane as well as knowledge of its location.

    (d)  I objected to Jury Instructions void of the complete Statute pertaining to
        18 USC §922(g)(1) and the definitions that apply found in 18 USC §921.

(e)  In the Sentencing Hearing the Judge doubled the sentence from 40 months to
84 months based on false alligations by the AUSA that due to my having given
testimony at trial and the Jury returning a guilty verdict, I had committed
purjury.  And the false alligation from an unidentified agent of the respondent
presented by the AUSA that he thought I was attempting to transport firearms
across the U.S. Canadian border even though the testimony and evidence in the
record, including my itinerary in the plane and at the airport desk showed
my destination being Cut-Bank Montana, the Judge doubled the sentence for two
charges I was never indicted for and no Jury ever determined the facts of or
returned a verdict for.  In what was effectively a second trial where my liberty
was in jepardy, the judge acted as judge and jury against my objections.

(f)  Throughout this matter I have asserted my diplomatic immunity and that via
22 USC §254(d) I objected to being charged, prosecuted, convicted or sentenced
and at the Sentencing Hearing I presented the Judge with a letter from the
Acting United States Attorney General Mathew Whitaker recognizing my status
an an Ambassador but he ignored both and refused to return my original letter
from Attorney General Whitaker.

(g)  My appeal to the Eighth Circuit Court was not limited to a denial of my Motion
for Acquittal, but included all of my defenses, including my actual innocents
that I did not possess a firearm, that I was not subject to the statute due to
having never been convicted of a felony as specified in 18 USC §921(a)(33)(B)(i)
(I), which required a prior conviction whereby I was represented by counsel
or having waived the right to counsel, that I was not subject to the Article I
Section 8 Commerce Clause, that I was not in a State or a Person as defined in
18 USC §921(a), that I have never waived my rights or immunities including
Diplomatic Immunity as provided by Treaty otherwise known as the Vienna
Convention on Diplomatic Relation, Montevideo Convention on Rights and Duties
of States, 1794 Jay Treaty, 1817 Treaty, 22 USC §254(d) and 28 USC 1602.

4.

(h)   I Petitioned the supreme Court in March of 2020, pursuant to Article III, Section 2, Clause 2 by right, (not by Writ of Certiorari) asserting all of my defenses and immunities as a live man and Ambassador of a Foreign Country, seeking an ORDER that the matters pertaining to my being charged, convicted and sentenced by the Respondents as well as that of my wife who was also targeted by agents of Respondents be, Vacated, Set Aside, Overturned, Voided and Expunged, that my wife and I be declared innocent or all charges, that we be immediately released and that all of our property be returned immediately. However, to date  I have received no response from the supreme Court for the united States regarding said Petition mailed from the Respondents Prison in Memphis Tennessee (where I was held captive against my will and tortured) with 1st Class Postage Paid Cartified Mail #7016 0910 0000 8037 7991.

4.   In his footnotes on pages 3-4, the Magistrate case citations do not apply, whereby he sites an unconstitutional statute which seeks to circumvent the 2nd Amendments recognition of a God-given (as recognized in the Declaration of Independence) right to bare arms for ones defense, which that statute 18 USC §1202(a)(1) no longer exist, but was apparently transfered to 18 USC §922(g)(1), a statute I have previously shown herein that does not apply to me for several reasons.  Furthermore, my petition to void the false convictions by Respondents refers to a recent decision in McGirt[3] where the supreme Court deemed the lack of jurisdiction and standing by the State against an American Indian whose individual right to be free from the political system of the State of Oklahoma exist still from the recognition thereof by virtue of a preexisting Treaty.  This Petition, which is an addendum to my orignial Petition to the supreme Court is based upon that same truth, and that the statutes of Tennessee did not, and do not apply to me by virtue of my status as a Cherokee/Metis man, as well as my status as an Ambassador with a direct pathway to the supreme Court to address those facts, as well as my actual innocents and that of my wife, coupled with preexisting recognition of my right and claim of independence from the State of Tennessee.  And the Magistrate's

---

[3] McGirt v. Oklahoma, S. Ct. June 2020. Decided (3) months after I filed at Supreme Ct.

failure to recognize the fact I am a Native American Indian of Cherokee Wolf Clan descent is reflected in his reference to a supreme Court ruling in Oklahoma v. Castro-Hueria, which pertains to "non-indians in Indian Country."

5.  In his Discussion section, the Magistrate persist in his reasoning why this matter should have been brough before the sentencing court via a statutory Habeas Corpus such as 28 USC §2255.  However, he ignors the undisputed fact that as an Ambassador, I have a constitutionally defined pathway directly to the supreme Court and I am not required to waive that right or grant jurisdiction to the Respondents inferior courts before I exercise that right.  From the beginning and at every special appearance, announced as such at all of the inferior courts of the Respondents, I have asserted my rights as a live man who has no contract with the Respondents as well as my status and immunities as an Ambassador of a Foreign Nation and demanded the matters be dismissed as required by Treaty, Statute, International Law and by right, or transfer the matter to the supreme Court.  However, the judges in those courts of the Respondents have manipulated the records to hide my status and defenses as evidenced by the Magistrates lack of recognition thereof.  In this matter, the Respondent's Federal Judges appointed attorneys without my consent and against my objection.  Only by their manipulation and gaming of the system did they unlawfully obtain the illusion of jurisdiction under color-of-office and violated Article III, Section 2, Clause 2 of the constitution for the united States, Treaty and International Law.  He further claims I did not appeal the Tennessee convictions.  However, my petition for Appeal sent to the Circuit Court was delayed by the Private Federal Prison holding me and the Tennessee Supreme Court never replied to my Appeal to them.  I was advised by Tipton County Tennessee Jailers that the lieutenant left my Appeal to the Tennessee Supreme Court on his desk for months and then it disappeared.  Likewise, my experience with the Federal Prison staff ongoing obstruction of my Special and Legal Mail has been well documented in their grievance system for over (3) years.  And finally, the Magistrate fails to recognize this Petition was written for me by someone else due to ongoing lock-downs with no access to a Law Library for 3 years.

6.

---

PETITION TO TRANSFER THIS MATTER TO THE SUPREME COURT FOR THE UNITED STATES

SUPPORTING ARGUMENT, CONTROLLING LAW, JUDICIAL OPINION and THE RECORD

Article VI, Clause 2 of the constitution for the united States mandates;

"This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be the supreme Law of the Land;...".

1. When the parties include Ambassadors and States, Original Jurisdiction and Venue are vested in the One supreme Court for the united States.

   Article III, §2, Clause 2 of the constitution for the united States mandates;

   "In all cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be a party, the Supreme Court shall have original Jurisdiction."

2. Respondents UNITED STATES OF AMERICA and STATE OF TENNESSEE are political systems of a body of people who are politically organized by consent. I have not consented thereto. This court shall take judicial notice that in 1991, STATE OF TENNESSEE passed a law prohibiting its citizens from owning or keeping full blooded wolves. However, at that time, I served notice upon STATE OF TENNESSEE of my Native American Indian Cherokee-Wolf-Clan ancestry, and as such, having owned and kept wolves all of my adult life and I will continue to practice Cherokee culture, tradition and religion irregardless of their rule of general applicability. Since then, STATE OF TENNESSEE has recognized my right to exercise my cultural tradition and religion without interferance thereof. I have since owned and cared for the largest collection of full blooded and hybrid-wolves in America. As such, STATE OF TENNESSEE has recognized my right to exist as a seperate political entity in keeping with the supreme Court's historical president recognition that the Cherokee are a sovereign Nation. (Worchester v. Georgia, 1832) Therein the court ecoed the 1817 Jackson McMill Treaty that recognized the right of the sovereignty of the individual and that no one has a right to divest another individual of the right to his land, sovereignty or political independence and self-determination. And the fact I have no license or registration but travel freely without being charged since 1988 is tacit recognition of my status as a Cherokee and NOT a U.S. or STATE OF TENNESSEE Citizen.

7.

3. This court shall take judicial notice that at every hearing and in every petition to the court I have given notice that by Special Appearance Only, I Ambassador Mike Parsons of the sovereign Tsilhqot'in Nation-Country of Chilcotin am a live man and reserve all of my rights which includes my Diplomatic Immunity.  In the audio recording of the first hearing, Magistrate Judge Zwart and the U.S. Attorney recognized and acknowledged verbally my status and refered to me in my official capacity as "Ambassador Parsons" throughout the hearing.  Furthermore, at that hearing and every other, as well as at trial, sentencing and now, I have, and do Move the court via Motion and Suggestion, to Dismiss the matter and Release me immediately or Transfer the matter to the supreme Court for the united States.'

4. This court shall take judicial notice that under 22 U.S.C. §254(d),

> "Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 3(b) or 4 of this Act [22 USCS §§ 254b or 254c], or under any other laws extending diplomatic privileges and immunities, shall be dismissed.  Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure."

But Respondent's Courts ignored this statute and treaty as well as my immunity and denied my motions. Then, without any motion by the D.A., A.U.S.A., nor any hearing on the matter where Brief and arguments were presented, the Respondent's judges "unilaterally" declared I was not an Ambassador and instructed the jury that they could not consider my Diplomatic Immunity as a fact. This court shall take judicial notice that it is not the perview of a judge to determine facts in a Trial-by-Jury or determine the status of an Ambassador of a sovereign nation. To date, Respondents have consistantly ignored the seperation of powers and rights of the sovereign people reserved by the 9th Amandment and those of a sovereign foreign nation who has been recognized by the Executive Branch of the united States.

¯ See attached Petition to Transfer Tennessee CaseRD9058 to Sup. Ct. for united States.

5. This court shall take judicial notice of the historical recognition of the Tsilhqot'in Nation-Country of Chilcotin by the united States of America since 1763, while it was still in a colony form of government when King George recognized the sovereign Tsilhqot'in Nation-Country of Chilcotin by Royal Proclamation. Then in 1794 with the united States signing of the Jay Treaty and by the united States Judiciary in Adkins v. Saxby, 380 F.Supp. 1210 (D.Me. 1974) via recognition of Article III of the Jay Treaty, 8 stat.116,

6. This court shall take judicial notice that as a signator to the Montevideo Convention on Rights and Duties of States, the Respondent's courts, as well as the Executive and Legislative branches are bound to that agreement. Including; Article (6), "The recognition of a state merely signifies that the state which recognizes it accepts the personality of the other with all the rights and duties determined by international law. Recognition is unconditional and irrevocable". Article (7), "The recognition of a state may be express or tacit, the latter results from any act which implies the intention of recognizing the new state". Article (8), "No state has the right to intervene in the internal or external affairs of another".

7. This court shall take judicial notice that as a signator to the Vienna Convention on Diplomatic Relations, the Respondent's are bound to that agreement. Including; Article (31), "A diplomatic Agent shall enjoy immunity from the criminal jurisdiction of the receiving state. He shall also enjoy immunity from its civil and administrative jurisdiction... No measure of execution may be taken in respect of a Diplomatic Agent. Article (39), "Every person entitled to privileges and immunities shall enjoy them...from the moment when his appointment is noticed to the minister for foreign affairs or such other minister as may be agreed".

Therefore, immunity is NOT based on recognition of, but by notification to the Department of State in the U.S.  Notification of my appointment was served upon Secretary of State John Kerry in January 2016 and subsequent confirmation of my A-1 Diplomatic Visa from the Department of State, confirmation No.AA006NW076 on January 19, 2017 is notification to the Minister for Foreign Affairs in the U.S.

8. In this matter, the record contains several documents that are undisputed proof and prima facie evidence of my adoption into the Tsilhqot'in Nation and as such, proof I am recognized statutorally as a full Tsilhqot'in tribal member, including exhibit 107 and 112 in DCD 29.  My only form of identification is my Tsilhqot'in Nation-Country of Chilcotin status card which was entered into the record by the Respondent UNITED STATES OF AMERICA, as their exhibit 3 and my exhibit 111, also in DCD 29.  Those documents and others provided to the court prior to trial and in the record not only prove I am recognized by the Tsilhqot'in Nation-Country of Chilcotin and as such, an internationally protected person, but also combined with the verbal recognition of my status Ambassador Parsons by the court, U.S. Attorney and Department of State is tacit and express recognition of my status as Ambassador.

9. This court shall take judicial notice that under 18 U.S.C. §1116(b)(2),

> "Foreign Government means the government of a foreign country, irrespective of recognition by the UNITED STATES. (3) Foreign Official means (A) A Chief of State or political equivalent... Ambassador,... any person who has previously served in such capacity, and any member of his family. (4) Internationally Protected Person means (A) A Chief of State or the political equivalent... Whenever such person is in a country other then his own, and any member of his family.

10. This court shall take judicial notice of my "Notice of Declaration of Legal Status and Character", filed in this matter and persuant to 15 statutes-at-large 249, (1868), Executive Order 13132, (1999) and my Condition Precedent (June 26, 2015) whereby I gave NOTICE to all and corrected the record to reflect that my "Legal

Status and Character is as a living flesh and blood man, a son or God in heaven, an Ambassador and tribal member of the Tsilhqot'in Nation-Country of Chilcotin and that I am not the 8 U.S.C. §1401 (a) statutory U.S. citizen nor the all capitol letter Artificial or Juristic Person, nor the faduciary, surety, trustee, acceptor or any other form of representative of any Artificial or Juristic Person, and as such, I am outside of the statutory jurisdiction of the U.S.A.". I served this NOTICE upon the Respondents prior to trial and it was accepted and should be a part of the record, thereby rebutting any and all presumptions of any connection to, contract with or obligation to the corporation known as the UNITED STATES, DBA UNITED STATES OF AMERICA, USA, U.S. and STATE OF TENNESSEE. (See Notice of Declaration of Legal Status and Character, Condition Precedent and Reservation of Rights in record)

11. And whereas the "Jay Treaty" is also a part of the record in the FBI file; discovery page 6, the united States recognizes the right of Americans to travel freely across the U.S./Canadian border and recognized that, "the Indians dwelling on either side of the... boundry line...Shall have the right freely to pass and repass by land or island navigation... and to navigate all the lakes, rivers and waters, thereof, freely, to carry on trade and commerce with each other." This harmonizes with the fact that congress never intended for Article (1) Section (8) of the Constitution to interfere with those rights of the Indians or the People of the several states because the Indians and the People never gave congress the power to regulate those rights. As such, 18 U.S.C. §922(g)(1) does not apply to me as a recognized full Native American Indian of the recognized sovereign Tsilhqot'in Nation. Nor does the stealthfully incorporated false accusations of attempting to cross the border and obstruction of justice for exercising my right to testify at trial by an unaccountable probation officer whose claim was a false charge no jury made a TRUE BILL of Indictment or determined at trial, but was used to magically double the sentence.

11.

12. Throughout this matter, I have experienced countless acts of minipulation of the
record via omission of facts and the twisting of my words by what are clearly
anti-constitution activist judges who ignored the aforementioned U.S. Statutes
and Treaties designed to prevent such abuses of an Ambassador of a foreign country.
Two such acts are found in DCD 38, whereat on page 8, Judge Gerrard falsely claims
in his footnote #1, "The defendant suggest that the spelling of his name in all
capitol letters invokes an "unknown entity", not him.  He is wrong:  In Federal
Court, capitalization is a matter of style, not substance.  See Jaeger v. Dubuque
City, 880 F.Supp. 640, 613-11(ND. Iowa 1995)" However, in my petition in DCD 38,
page 20 I stated, "I was told an all capitol letter MICHAEL PARSONS, an unknown
entity, was indicted on 1 count of 18 U.S.C. §922(g)(1)".  No where did I say that
the spelling in all capitol letters was my name as Judge Gerrard wrote. And
whereas it is a matter of style, or an indication of (according to Websters
Dictrionary) "A manner of expression characteristic of an individual, orientation
assumed in discourse and qualifying designation", I have rebutted any and all
assumptions that I am such as that all capitol letter MICHAEL PARSONS which is
by definition of Capitis Diminuto Maxima, meaning the maximum loss of status
through the use of capitalization, and in the U.S. Printing Style manual, the use
of all capitol letters in all courts indicate a non-living entity.  I have clearly
articluated that, unlike the UNITED STATES, which is a corporation and as such,
an artificial person and non-living entity, I am a living flesh and blood man.
As such, I am substance and actuality as a live man. Even the Supreme Court said;

"Inasmuch as every government is an artificial person, an abstraction, and a
creature of the mind only, a government can interface only with other artificial
persons. The imaginary, having neither actuality nor substance, is forclosed
from creating and attaining parity with the tangible. The manifestation of this
is that no government, as well as any law, agency, aspect, court, etc. can
concern itself with anything other than corporate, artificial persons and the
contracts between them."-S.C.R. 1795, Penhallow v. Doane's Administrators (3
Dall.54, 1L.Ed. 57, Supreme Court of the united States 1795)

12.

13. And in DCD 38, page 10, Judge Gerrard falsely stated in footnote #3, "The defendant also questions the court's jurisdiction over him, purporting to be a Foreign Ambassador, and asserting Diplomatic Immunity pursuant to the Vienna Convention on Diplomatic Relations, Article 31... But Diplomatic status cannot be unilaterally established; rather, it depends on recognition by the Department of State. See UNITED STATES v. Lumumbia, 741 F.2d. 12, 15 (2d Cir. 1984)...Mazengo v. Mzengi, 542 F.Supp. 2d 96, 99-100 (D.D.C. 2008); See generally The Schooner Exch. v. McFaddon, 11 U.S. 116, 138 (1812). The defendant has given the court no evidence, or any reason to believe, that his supposed Diplomatic status has been recognized by the State Department." However, in his opinion, Judge Gerrard failed to site the part in Lumumba where the court specified this opinion was only applicable to a country within the United States, whereby the UNITED STATES Congress (wrongly in my opinion) claims to be a guardian over the other sovereign countrys within the United States which they view as wards of the UNITED STATES Congress. The Tsilhqot'in Nation -Country of Chilcotin is not in that area. It is north of the so-called U.S. Canadian bourder. Also, the court did not recognize diplomatic immunity in Mzengis' case because he failed to assert his immunity. In my case it is undisputed and a matter of record that I have asserted my immunity from the beginning of this matter. And, the Schooner case was abdicated by the Vienna Convention on Diplomatic Relations. In this matter, Respondents    chose to ignore my status as an Ambassador of a sovereign Foreign Nation in spite of documentaion in the record that was undisputed that proved I was appointed as the Ambassador of the Sovereign Tsilhqot'in Nation, letters from the Tsilhqot'in governing authority, the Hereditary Grand Chief acknowledging my status as well as confirmation and thereby, recognition of my notification to the U.S. Department of State, via authorization of my A-1 Diplomatic VISA as required by the Vienna Convention on Diplomatic Relations Article(39).   Respondents   also ignored the

Foreign Sovereign Immunity Act of 1976, 28 U.S.C. §1330 and §§1602-1611, which treat individual agents of a foreign state, when they undertake their official duties, as foreign states for purposes of 28 U.S.C. §1603, thus 28 U.S.C. 1604 grants immunity to individual officials of foreign government for their official-capacity acts. 538 F.3d 71, 552 F.3d 371, 1741 LEd 2d 576, 1761 LEd 2d 1047.

The Foreign Sovereign Immunity Act , 28 U.S.C. §1330 and §§1602-1611 apply to the Tsilhqot'in Nation-Country of Chilcotin irregardless of recognition by the U.S. Since the Foreign Sovereign Immunity Act 28 U.S.C. §1602 et seq recognizes immunity of foreign sovereigns from criminal prosecution, foreign sovereigns cannot be indicted in the United States and when applying the Foreign Sovereign Immunities Act 28 U.S.C. §1330 and §1602 et seq, the court is to presume immunity, and when ambiguity exist, it ought to find in favor of immunity. Gulch v. Fed. Republic of Germany 2006, DC Dist Col, 444 F.Supp. 2d1, 255 Fed Appx. 524. And whereas, the Foreign Sovereign Immunity Act does not vest Federal courts with subject matter jurisdiction by creating independent causes or actions, the court was without jurisdiction to issue search warrants of the Tsilhqot'in Nation-Country of Chilcotin Embassy and Ambassadors home or the Diplomatic Transport Plane.  Hashemite Kingdom of Jordan v. Hayale Enters In re-B-727 Aircraft(2001)CA5 Tex 272 F.3d 264.

And, immunity from seizure under the Foreign Sovereign Immunity Act, 28 U.S.C. §§1602-1611, applies regardless of whether property of foreign sovereign is in that sovereign's possession at the time of arrest. Odessey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel 2011, CA11 Fla 657 F.3d 1159.  At trial, I claimed the plane and it's contents for the Tsilhqot'in Nation-Country of Chilcotin. In Philippines v. Pimental (2008) 553 US 851, 128 S. Ct. 2180, the court said, "case may not proceed when...sovereign is not amenable to suit; where sovereign immunity is asserted and claim of sovereignty are not frivolous, dismissal of action must be ordered."

14. In this matter, both the United States and Tennessee Courts have under color-of-office, unlawfully seized jurisdiction when they had none and unilaterally declaired I was not an Ambassador in violation of the accepted interpretation of the Vienna Convention on Diplomatic Relations Article(s) that deem immunities are effective upon notification to minister of foreign affairs. And unless the receiving State objects to the appointment, he will thereby have been "accredited". Because no evidence appears of a contrary interpretation advanced by any of the United Nations members, all of whom are parties to the convention, federal courts must defer to the language of the convention. However, the Respondent(s) Courts claimed the State Departments Roster void of my name was proof I had not been accredited. However, the UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT settled this question in U.S. v. Vladimir Dizdar, 581 F.2d 1031; 1978 U.S. App. LEXIS 9927 Nos. 791, 947, 948, Dockets 78-1007, 78-1020, 78-1021, Decided July 27, 1978 that; for purposes of being "Duly Notified" to the United States; "22 C.F.R. §2.3 (1975) states;

> (a) Any notification of a foreign official for purposes of section 1116(b)(2) of title 18 of the United States Code shall be directed by the foreign government...to the Chief of Protocol, Department of State, Washington, D.C. 20520. For persons normally accredited to the United States in diplomatic or consular capacities...and in turn notified to the Department of State, the procedure for placing a person in the statutory category of being "duly notified to the United States" shall be the current procedure for accreditation, with notification in turn when applicable...
>
> All that should be necessary in the case of a member of the staff of the mission is his notification by the sending State to the...receiving States...and their express or tacit acceptance of him. A person can be "accredited" in many ways. A note from the head of mission regarding(1978 U.S. App. LEXIS) a newly arrived member of his staff should be quite sufficient to assure the receiving State that he does in fact speak for his government. Unless the receiving State objects to the appointment, he will thereby have been "accredited," in the dictionary meaning of the term. 7 Whitman, Digest of International Law 77 (1970).

...Although subparagraph (a) of 22 C.F.R. §2.3 requires the Chief of Protocol of the State Department to maintain a roster of the names of persons who have been duly notified to the United States, the maintenance of such a roster is not a condition precedent to effective notification of a foreign official to the United States... Nor was introduction of the actual roster the only way in which the Government could prove that the... Mission staff included(1978 U.S. App. LEXIS 10) "foreign officials" within the meaning of 18 U.S.C. §1116(b)."

In this matter, the Respondents Executive have never objected to my appointment nor have they declared me to be persona-non-grata as required by their controlling agreement in the Vienna Convention on Diplomatic Relations Article (9).

## CONCLUSION

Whereas the Magistrates Recommendation is clearly based on his review ONLY of the opinion of the 8th Circuit Court, which also failed to review and site the entire record, I object to it and MOVE this court to adopt this Memorandum in Support of my Objection to Magistrate's Recommendation. And in light of my Argument, Controlling Law, Judicial Opinion and The Record sited in my Petition to Transfer this Matter to the supreme Court for the United States recognizing the constitutional mandates therein, I also MOVE this Court to issue an ORDER to Transfer this Matter to the supreme Court.

Also, with the ongoing obstruction of my correspondence and systematic restriction to access the Law Library by staff who claim a judge from this Court said, "I will accept any petition, even written on toilet paper in blood". I am sure it was not the intent of that justice that we use our blood and toilet paper as a minimum standard for the standard of "adequate resources for preparing meaningful legal documents", and hereby MOVE this Court to issue an ORDER that the FORREST CITY PRISON Activate the Lexis-Nexis Federal and State Case Database and Word-Processor on every computer in All Housing Units, and access to the PACER System on the computers also as required to assure equal access to the Court. This will guarantee timely notification of Court Orders and Filing of Petitions and eliminate the prison manufactured hindering of access to legal resources in the Law Library during lockdowns and staff shortages. Only then will this facility understand the TRUE definition intended by the supreme Court in Bounds v. Smith (1977) when it specified providing resources for the production of "Meaningful Legal Petitions". And, whereas my Notice of Obstruction of Justice[2] filed in the U.S. District court for Tennessee at Memphis, where this matter was originally filed has never been responded to, and the systematic Obstruction of my correspondence with the court persist despite my grievances to this facility, I hereby MOVE this court to issue and ORDER for the AUSA of this District to investigate this matter persuant to criminal charges and ORDER RESPONDENTS AGENTS TO CEASE AND DESIST ANY FURTHER OBSTRUCTIVE ACTS.

[2] See attached NOTICE OF OBSTRUCTION OF JUSTICE filed May 27, 2022.

16.

## CERTIFICATE OF SERVICE

I, Ambassador Mike Parsons hereby Certified that this MEMORANDUM IN SUPPORT OF
PETITIONERS' OBJECTION TO MAGISTRATE'S RECOMMENDATION and PETITION TO TRANSFER THIS
MATTER TO THE SUPREME COURT FOR THE UNITED STATES, AND Motions to ORDER Forrest City
Prison to provide access to Lexis-Nexis Federal and State Case Database, Word-Processor
activation on all Computers in all housing units and access to PACER System on all
computers in all housing units, was placed into the outgoing mail box with 1st Class
and Certified Mail Postage paid this 25th Day of August 2022 and per Federal Rules is
considered filed this day.

ALL RIGHTS RESERVED

Ambassador Mike Parsons
Tsilhqot'in Nation-Country of Chilcotin
c/o FOR-LOW, #30237047
P.O. Box 9000
Forrest City, Arkansas 72336

(FOR TBI USE ONLY) State Identification Number: _____

(FOR TBI USE ONLY) FBI Identification Number: _____

## ORDER FOR THE EXPUNGEMENT OF CRIMINAL OFFENDER RECORD   (PLEASE PRINT OR TYPE)

State of Tennessee vs  MICHAEL W. PARSONS _____ Circuit Docket Number  8296 (15-CR-110)

Date Original Case was filed in Clerk's Office  3/2/2018 ____ General Sessions Docket Number  14-CR-314

In the **CIRCUIT COURT** of **TIPTON** County, Tennessee at **COVINGTON TN**

On the Motion or Petition of  MICHAEL  W. PARSONS _____

**Defendant/Arrest Information:**

MICHAEL  W. PARSONS
*Defendant (name used at time of arrest)*

Race W   Sex M   Date of Birth 5/5/61

TIPTON  COUNTY
*Arresting Agency*

OCA# 84000   Date of Arrest 5/16/15

POSS WEAPON - CONVICTED FELON
*Charge 1(As shown on arrest fingerprint card)*

SSN# 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

POSS WEAPON - CONVICTED FELON
*Charge 2(As shown on arrest fingerprint card)*

_____
*Charge 3(As shown on arrest fingerprint card)*

**Disposition Information:**

DISMISSED
*Final Charge 1*

DISMISSED
*Final Charge 2*

_____
*Final Charge 3*

_____
*Final Disposition*

_____
*Diversion Date (if applicable)*

The defendant named above is entitled to have all PUBLIC RECORDS relating to the offenses listed above expunged according to the Tennessee Code notated provision marked below:

**Provision relating to Adults:**
X  Charge has been dismissed (T.C.A. § 40-32-101)
___ No true bill returned by Grand Jury (T.C.A. § 40-32-101)
___ Verdict of not guilty returned by jury (T.C.A. § 40-32-101)
___ Conviction which has by appeal been reversed (T.C.A. § 40-32-101)
___ Nolle Prosequi entered in case (T.C.A. § 40-32-101)
___ Successful completion of all probation provisions and proceedings against defendant have been discharged by the court (T.C.A. § 40-35-313)
___ Suspension of prosecution pursuant to T.C.A. § 40-15-105

**Provisions relating to Juveniles:**
___ Petition alleging delinquency not filed (T.C.A. § 37-1-155)
___ Proceedings dismissed after petition is filed or the case transferred to Juvenile Court as provided in T.C.A. § 37-1-109 (T.C.A. § 37-1-155)
___ Adjudicated not to be a delinquent child (T.C.A. § 37-1-155)
___ Child has reached eighteen (18) years of age and there is no record that he committed a criminal offense after reaching sixteen (16) years of age, unless such fingerprints were obtained on alleged charge which if committed by an adult would be a felony (T.C.A. § 37-1-155)
___ Passage of six (6) months from date of liquor law violations defined by T.C.A. § 57-3-412(a)(3)(c) or T.C.A. § 57-5-301(e)(3)

It is ordered that all PUBLIC RECORDS relating to such offense above referenced be expunged and immediately destroyed upon payment of all costs to : and that no evidence of such records pertaining to such offense be retained by any municipal, county, or state agency, except non-public confidential information ned in accordance with T.C.A. § 10-7-504 and T.C.A. § 38-6-118.

**APPROVED FOR ENTRY**

_____
*Defendant/Attorney for Defendant*

FILED

SEP 03 2020

MIKE FORBESS, CLERK

Entered this  3  day of  Sept , 2020

_____
*Judge*

_____
*District Attorney General*

(FOR TBI USE ONLY) FBI Identification Number: _____

## ORDER FOR THE EXPUNGEMENT OF CRIMINAL OFFENDER RECORD (PLEASE PRINT OR TYPE)

State of Tennessee vs **MICHAEL W. PARSONS** Circuit Docket Number **8627(16-CR-187)**

Date Original Case was filed in Clerk's Office **3/7/2016** General Sessions Docket Number _____

In the **CIRCUIT COURT** of **TIPTON** County, Tennessee at **COVINGTON TN**

On the Motion or Petition of **MICHAEL W. PARSONS**

**Defendant/Arrest Information:**

**MICHAEL W. PARSONS**
Defendant (name used at time of arrest)

Race **W** Sex **M** Date of Birth **5/5/61**

**TIPTON COUNTY**
Arresting Agency

OCA# **84000** Date of Arrest **3/28/2017**

**POSS WEAPON — CONVICTED FELON**
Charge 1(As shown on arrest fingerprint card)

SSN# **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**

**POSS WEAPON — CONVICTED FELON**
Charge 2(As shown on arrest fingerprint card)

_____
Charge 3(As shown on arrest fingerprint card)

**Disposition Information:**

**DISMISSED**
Final Charge 1

**DISMISSED**
Final Charge 2

_____
Final Charge 3

_____
Final Disposition

_____
Diversion Date (if applicable)

The defendant named above is entitled to have all PUBLIC RECORDS relating to the offenses listed above expunged according to the Tennessee Code Annotated provision marked below:

Provision relating to Adults:
_X_ Charge has been dismissed (T.C.A. § 40-32-101)
___ No true bill returned by Grand Jury (T.C.A. § 40-32-101)
___ Verdict of not guilty returned by jury (T.C.A. § 40-32-101)
___ Conviction which has by appeal been reversed (T.C.A. § 40-32-101)
___ Nolle Prosequi entered in case (T.C.A. § 40-32-101)
___ Successful completion of all probation provisions and proceedings
     against defendant have been discharged by the court
     (T.C.A. § 40-35-313)
___ Suspension of prosecution pursuant to T.C.A. § 40-15-105

Provisions relating to Juveniles:
___ Petition alleging delinquency not filed (T.C.A. § 37-1-155)
___ Proceedings dismissed after petition is filed or the case transferred to Juvenile
     Court as provided in T.C.A. § 37-1-109 (T.C.A. § 37-1-155)
___ Adjudicated not to be a delinquent child (T.C.A. § 37-1-155)
___ Child has reached eighteen (18) years of age and there is no record that he
     committed a criminal offense after reaching sixteen (16) years of age, unless
     such fingerprints were obtained on alleged charge which if committed by an
     adult would be a felony (T.C.A. § 37-1-155)
___ Passage of six (6) months from date of liquor law violations defined by
     T.C.A. § 57-3-412(a)(3)(c) or T.C.A. § 57-5-301(e)(3)

It is ordered that all PUBLIC RECORDS relating to such offense above referenced be expunged and immediately destroyed upon payment of all costs to erk and that no evidence of such records pertaining to such offense be retained by any municipal, county, or state agency, except non-public confidential information tained in accordance with T.C.A. § 10-7-504 and T.C.A. § 38-6-118.

**APPROVED FOR ENTRY**

_____
Defendant/Attorney for Defendant

_____
District Attorney General

FILED

SEP 0 3 2020

MIKE FORBESS, CLERK

Entered this **3** day of **Sept**, **2020**

_____
Judge

rm EX-1 (Rev. 2003)

Petitioner
By Special Appearance Only
Ambassador Michael Parsons of the sovereign Tsilhqot'in Nation – Country of the Chilcotin,
a live man under duress, without prejudice currently held against my will at the
West Tennessee Detention Facility at Mason Tennessee

---

### From the 25ᵗʰ Judicial District Circuit Court for Tennessee at Covington

| | | |
|---|---|---|
| STATE OF TENNESSEE, an unknown and undisclosed corporation. | ) | Demand as a Matter of Right |
| | ) | Transfer to the Article III  Section 2 |
| Plaintiff | ) | Constitutional Common Law Court of |
| | ) | Original Jurisdiction in all cases |
| vs. | ) | Affecting Ambassadors for a New Trial or |
| | ) | ORDER an Acquittal, Arrest of Judgment |
| MICHAEL WAYNE PARSONS, an unknown | ) | and Release from Confinement. |
| and undisclosed corporation or trust. | ) | |
| Defendant | ) | RD 9058 |

---

### Notice
**Demand as a Matter of Right, Transfer to the Article III Section 2 Constitutional Common Law Court of Original Jurisdiction in all cases Affecting Ambassadors for a New Trial or ORDER an Acquittal, Arrest of Judgment and Release From Confinement**

---

#### History of the case, Undisputed Facts and Offer of Proof:

1. On January 12, 2017 Petitioner was arrested by an F.B.I. Swat Team for the alleged charge of Felony Failure to Appear from an illegal CAPIAS issued by MIKE FORBESS, CLERK OF THE CIRCUIT COURT OF TIPTON COUNTY on January 10, 2017. MIKE FORBESS not only issued the capias but is also listed as the witness to the alleged crime. The CAPIAS states, "Arrest **MICHAEL PARSONS** and bring him/her before the Circuit Court of Tipton County in answer to a presentment or indictment on the charge(s) of: ...**FELONY FAILURE TO APPEAR**. Witness MIKE FORBESS, Clerk of Court **JANUARY 10, 2017.**" Then on March 30, 2017 Petitioner was taken before an unknown and undisclosed administrative tribunal later referred to as the Tipton County Court without any advance notice and was not provided a copy of the indictment until after the matter was over and Petitioner was being taken out of the unknown and undisclosed forum. Tennessee Rules of Criminal Procedure Rule 10(b)(1) requires a copy of the indictment be provided to the alleged defendant prior to the proceedings. From the time of the arrest for Felony Failure to Appear on January 12, 2017 until the arraignment March 30, 2017, no Preliminary Hearing was provided and no waiver for one was given. At the arraignment, Petitioners demand for dismissal of indictment due to failure to provide a preliminary hearing was denied. It is an undisputed fact that an arrests can not be made on a new charge of Felony Failure to Appear via a Capias when there was no indictment for said Felony Failure to Appear prior to the arrest for Felony Failure to Appear. Therefore, the Capias was void. Failure to provide a Preliminary Hearing for a new charge from an illegal capias not stemming from an indictment was a violation of Rule 5(e) and a gross violation of due process and fundamental fairness. Therefore, the said judge Walker denial of a Preliminary

Hearing on the new charge of Felony Failure To Appear in violation of Rule 5(e) requires immediate reversal. Additionally, the Tennessee Department of Correction Investigation Report provided in this matter at the Sentencing Hearing on September 01, 2017 states, "No affidavit of complaint was available in the clerks office." "Warrant for arrest of defendant was invalid when issued upon the basis of unsworn statements... " Rules Crim. Proc., Rule 3,4; U.S.C.A. Const. Amend. 5. State v. Burtis, 1983, 664 S.W.2d 305.

2. The indictment did not state a cause by which relief can be granted. Whereas the indictment does not specify the identity of the alleged all capitol letter defendant MICHAEL WAYNE PARSONS or the all capitol letter plaintiff STATE OF TENNESSEE. This court will take judicial notice that the U.S. Printing Style Manual references U.S. Courts use of all capitol letters in a name only reference, "Non-human" entities such as corporations and trust. Therefore, the all capitol letter STATE OF TENNESSEE is an unknown and undisclosed corporation and as such could be one of many corporations listed with Dun & Bradstreet. And the all capitol letter MICHAEL WAYNE PARSONS would also be an unknown and undisclosed corporation or trust. It is an undisputed fact that Petitioner is a living flesh and blood man who has no contract, obligation or agreement with STATE OF TENNESSEE corporation requiring performance nor is Petitioner the trustee, surety or fiduciary for any MICHAEL WAYNE PARSONS corporation or trust. "The State has the burden of proving every element of the crime charged and this burden specifically includes the identity of the alleged defendant ." State v. Dotson, 2008, 254 S.W.3d 378. Furthermore, the indictment alleges that the all capitol letter MICHAEL WAYNE PARSONS *fail to appear... as required ... in violation of T.C.A. 39-16-609"* However, T.C.A. 39-16-609 specifies that the person had to *"fail to appear as directed by a lawful authority..."* STATE OF TENNESSEE presented no evidence that the alleged defendant or Petitioner "failed to appear *as directed* by a lawful authority" as specified in T.C.A. 39-16-609 or that Petitioner had any contract, obligation or agreement with STATE OF TENNESSEE to appear. Therefore, the verdict must be set-aside and this matter dismissed for failure to state a cause by which relief can be granted, because the nature and cause of the matter are unknown, and the unknown alleged defendant should not have been charged whereas no such Statute or Law exist and no such plaintiff or defendant are identified. Rule 34. states, The court **shall** arrest judgment if: (1) the indictment, presentment or information does not charge an offense; "Although motion alleging defect in indictment was not presented before trial began, waiver did not apply when indictment failed to assert an essential element of the offense, in which case no offense had been charged and subsequent proceedings were a nullity. Rules Crim. Proc., Rules 12(b), (b)(2), 13(b), 34. State v. Perkinson, 1992, 867 S.W.2d 1. Additionally, this is in violation of the 6th amendment of the Constitution for the united States which states, "the accused shall... be informed of the nature and cause of the accusation."

3. The Tipton County Court lacks jurisdiction. The Constitution for the united States of America, Article III Section 2 states, "In all cases affecting Ambassadors... the supreme Court **shall** have original jurisdiction. This court will take judicial notice that all courts of the united States are bound to their treaties and as a signatory to the Vienna Convention on Diplomatic Relations Article 31 states "A diplomatic agent **shall** enjoy immunity from the criminal, civil and administrative jurisdiction of the receiving state." It was an undisputed fact at trial and evidence supported that Petitioner is the Ambassador of the Tsilhqot'in Nation - Country of the Chilcotin and Petitioner has never given jurisdiction to this court. At trial, the assistant District Attorney stipulated Petitioner is not a U.S. Citizen. Rule 34 (a) states that the court **shall** arrest judgment if (2) the court was without jurisdiction of the charged offense. The fact is, this court has never had jurisdiction over Petitioner as he has maintained his immunity, has never consented to the court and from the beginning this court has refused to disclose the form of

court it is operating or how it claims jurisdiction over Petitioner without his consent. When originally asked the form of court the said judge Walker replied, "Google it!"

4.  On May 22, 2017, Assistant District Public Defender David Stockton advised he was only meeting Petitioner to deliver documents and determine if he could help.  However, he could not answer any of Petitioners questions, including the ones Walker claimed an attorney could answer, specifically, what form of court Walker was operating, what rules Walker was under and who were the all capitol letter Plaintiff and Defendant listed in the indictment.  Stockton also refused to recognize Petitioners defenses of Diplomatic Immunity, no contract with STATE OF TENNESSEE, no directive to appear and the defense of Duress and Necessity to prevent another attempt on Petitioners life at the order of a judge in Tipton County who could make deals with inmates as demonstrated by the attempted murder of Petitioner by inmate Jaron Toliver at the Tipton County Jail on May 29, 2016. (See trial exhibit, letter from Dr. Freeza regarding broken ribs and his warning not to go back into their operation where he references the obvious vendetta against Petitioner by the Law Enforcement Officials in Tipton County Tennessee and letter from Jeremy Shannon)

5.  Petitioner was denied conflict free legal counsel.  Stockton was appointed to counsel the undisclosed defendant but informed the court he had 2 conflicts of interest and Walker subsequently removed him from further counsel but then appointed him as "Elbow Counsel."  If counsel has a conflict of interest, said conflicts do not magically disappear by reducing his responsibility to that of an unauthorized and undefined status of 'Elbow Counsel" which Petitioner gave Notice he did not consent to.  Such manipulation and abuse of Petitioners right to legal counsel denies Petitioner the right to effective and conflict free counsel and only serves to insulate Stockton from potential civil charges or reversal of any conviction in  Walkers' rigged trial for ineffective assistance of counsel.  Walker ignored Stocktons undisclosed conflict that Petitioner exposed to him before trial.  That being Stocktons active representation of inmate Bill Williams whose threats to rape and kill Petitioners wife, burn down their home and kill all of their animals was reported to Walker before trial and a written statement was presented to Walker from an inmate Tommy Glover who witnessed the terroristic threats to Petitioner from inmate Bill Williams.  "Conflict of Interest / Attorneys can not represent conflicting interest or undertake to discharge inconsistent duties; when an attorney has once been engaged and received the confidences of his client, he can not enter the services of those whose interest are adverse to that of his client or former client." Mattress v. State, 1977, 564 S.W. 2D 678. Stockton gave no counsel or assistance before, during or after trial other than to bring Petitioner a cup of coffee after Petitioner informed the court that at 56 years of age, 6'5" tall and 195 lbs upon entry to the Tipton County Jail and 170 lbs at the time of the trial, having been tortured via starvation and sleep deprivation with the lights left on 24/7, he was physically exhausted and barely able to stand, let alone perform at a trial.  Walker denied a continuance due to Petitioners physical exhaustion.  Other than the coffee, Stocktons' only efforts were to assist the court with finding a rule for witnesses that ultimately did not apply to Ambassadors.  When Stockton went to retrieve a character reference Walker asked, (laughing) "Where is the courier going?"

6.  Petitioner was denied the right to legal counsel and never waived his right to legal counsel. Petitioner argued he did not consent to the proceedings without legal counsel or counsel who had several conflicts of interest including, (1) Stockton was at that very moment representing Tipton County Jail inmate Bill Williams who had threatened to rape and kill Petitioners wife, burn down Petitioners home and kill all of Petitioners animals.  (See trial exhibit, witness letter of Tommy Glover) (2) Stocktons office represented an inmate Jaron Toliver who had attempted to kill Petitioner on May 29, 2016 in the Tipton County Jail resulting in Petitioner being taken to the hospital with several cuts bruises and 3 broken ribs. (See trial exhibit, June 12, 2017 letter from Stockton)  (3) Stocktons office investigator Brent Chun posed as a sheriff's deputy giving

false testimony at a hearing against Petitioner, "with the objective of ensuring your return to prison." (See June 12, 2017 letter from Stockton) And now at the trial in this matter Mr. Chun under oath testified he had in fact falsely testified in 2014 as though he was Tipton County Sheriff's Deputy Michael Green at a hearing against Petitioner." Thereby confessing to perjury and impersonation of an officer at an Administrative Hearing under oath. (See exhibit, affidavit of Clete Webster) Before the trial, Walker refused to continue the matter despite knowing the attorney he appointed was listed as a subpoenaed witness which violates the principle that an attorney who will likely be called as a fact witness at trial may not participate as an advocate in the case. At trial, Stockton was a subpoenaed witness for Petitioner, who despite his statement to Petitioner referenced in a letter to Stockton from Petitioner dated June 14, 2017 confirming Stocktons' statement that an attempt to arrest Walker was made by a fugitive recovery squad via an arrest warrant issued by the Universal Supreme Court of the Tsilhqot'in. (See June 14, 2017 letter to Stockton from Petitioner) And despite Stocktons letter of June 12, 2017, under oath Stockton denied his investigator testified against Petitioner with the "objective of ensuring your return to prison." As was expected, at the trial, Stockton offered no help other than to provide i cup of coffee for petitioner on both days of trial. ("Where the record did not reflect whether trial judge made requisite inquiry and investigation to determine whether defendant intelligently, understandingly and willingly waived benefit of counsel and did not indicate whether the trial judge sought to have defendant sign written waiver of right to counsel..., reviewing court could not speculate on the matter but rather, would reverse conviction and order a new trial. T.C.A. 40-202, 40-203, 40-2015, 40-2016; Const. Article 1 Sect. 9; U.S.C.A. Const. Amend. 6. State v. Coleman, 1975, 519 S.W.2d 581.

7. Fundamental fairness demand that an adjudicator and jury be provided without even the appearance of impartiality, absent a malicious prosecutor in a court with jurisdiction. However, this was but another travesty of justice at the hands of said judge Joe Walker III whom I sued for Official Oppression in 2009, Parsons v. Walker, et al. U.S. District Court at Memphis and whom prior to this trial was made aware of an indictment and arrest warrant against him for his ordering the unlawful kidnapping of Petitioner and holding Petitioner hostage in the private for profit jail in Tipton County Tennessee. Denying recusal of himself and a change of venue for these reasons known prior to trial, followed by his refusal to provide a continuance to obtain conflict free legal counsel and to allow a subpoenaed material witness, Grand Chief Stanley Stump of the sovereign Tsilhqot'in Nation to appear given the fact his country was literally engulfed with wildfires, (evidence provided prior to trial) clearly indicated the level of official oppression and abuse of discretion one would expect in a kangaroo court. Walker refused to allow all 5 subpoenaed Tipton County Jailers and inmates who witnessed physical and psychological abuse of Petitioner to testify. Petitioners objections to Walkers hand picking the jury himself from his own stack of predetermined jurors and his refusal to dismiss the jury pool for cause when they unanimously refused to follow the Constitutions for the united States of America, Tennessee and all treaties thereto was denied. During voir dire jurors verbalized determinations as to their refusal to determine if Petitioner was an Ambassador and as such denied his right to the diplomatic immunity from the criminal, civil and administrative jurisdiction of STATE OF TENNESSEE. The entire jury viewed themselves as United States, Tennessee and Tipton County Citizens owing allegiance to those entities. They viewed me as a foreigner given the fact I am not a U.S. Citizen. I am a live man of Cherokee Wolf Clan descent, adopted by and now a tribal member of the Tsilhqot'in Nation, appointed Ambassador of the Tsilhqot'in Nation and a non-resident alien. I am not subject to any corporate government statutes. However, I am protected by God given rights, including those recognized by the constitution for the united States of America, Tennessee and all treaties thereto. None of the jurors were of Native American descent nor were there any jurors of a minority ethnicity. None

had any friends, relatives or familiarity with Native Americans, Ambassadors, Amish nor Ministers whom were not subject to the jurisdiction of the corporate government entities. They viewed themselves as being "subjects," and as such, viewed themselves as "STATE OF TENNESSEE," and as such, "the victim," and as such, "the Plaintiff." Objections to jurors based upon general disqualifications such as **Alienage**… are within profter defectum class. State v. Brock, 1996, 940 S.W.2d 577.   Blacks Law Dictionary 5th addition defines "Alienage" as, "the condition or status of being an alien.   During the trial, Walker was observed and challenged for his signaling the District Attorney when to object, clearly indicating he was prejudiced and rigging the trial.   Walker ignored the 5 pre-trial notices Petitioner asked about before trial and he never replied to them.   Whereas, Petitioner argued he was held for 6 ½ months without the assistance of counsel and had exercised his only option of submitting notice to the court via the jailers and hope they would deliver them to the court clerk.   In this case, Walker set no date for pre-trial motions to be heard and refused to continue the matter to address them.   Rule 21(a) Grounds for Change of Venue, "the court should order a change of venue when a fair trial is unlikely and for any other cause." (d)(1) "if the same cause for change of venue exist in all other counties in the judicial circuit, the court **shall** change venue to the nearest county where the same cause for change of venue does not exist."   Given the fact I had sued the District Attorney Mike Dunavant in 2009 for Malicious Prosecution and he controls the 25th judicial district, transferring this matter to Shelby County would be the next closest county that he would not have any influence and or control over.   Given the fact that Petitioner had not only sued Walker but also the Tipton County Executive Jeff Huffman over a rigged election in 2006 and whose appointed manager of the Election Commission Office selects the list of registered voters that make up the jury pool, the potential of rigging the jury was great and the appearance of fairness was impossible.

8.  STATE OF TENNESSEE witness Mike Forbess gave false testimony that STATE OF TENNESSEE and COUNTY OF TIPTON were not corporations.   However the court will take judicial notice that they are listed as corporations on Dun and Bradstreet, have a corporate charter and the Tennessee Rules of Civil Procedure states, "In suits against a county, Rule 4.04(7) provides for service upon the chief executive officer of the county.." clearly indicate they are corporations.   STATE OF TENNESSEE witness Mike Forbess is also the Tipton County Court Clerk who processed this case during the trial and sentencing hearing creating a conflict of interest whereas he had a financial interest in the matter.   STATE OF TENNESSEE witness Jailer John Weatherly also gave false testimony stating that the Tipton County Jail was not a private for profit jail despite the STATE OF TENNESSEE advising they have no jurisdiction over the jail because they are a private for profit operation.   Weatherly also without being asked told jurors they paid for the transportation cost of bringing Petitioner to Tennessee, (implying a guilty verdict would reimburse them) rendering their verdict one of a financial interest.   The Assistant District Attorney Walt Freeland demonstrated the discriminatory attitude of STATE OF TENNESSEE and his boss, D. Michael Dunavant by his national-origin discrimination statement, "Do you find the Tsilhqot'in Nation Tribe on the internet or in a Cracker Jack Box?"   Thereby prejudicing Petitioner before the jurors.

9.  STATE OF TENNESSEE provided no evidence to support verdict and as such the verdict was not only against the weight of evidence but lacked legal sufficiency for a conviction.   STATE OF TENNESSEE'S evidence presented at trial showed no Order, Summons, Directive, Agreement, Contract or Obligation for the Petitioner to appear on January 10 2017 at the Tipton County Court.   Rule 33(d) requires a new trial where the verdict is against the weight of the evidence and upon request the New Trial **shall** be conducted by a different judge.

10. The Plaintiff failed to appear when Petitioner called it to testify.   When the plaintiff failed to appear in court, there was no way to know the true party to the action and therefore no way to

know the true nature and cause of the action or if Plaintiff had standing to make a claim. Furthermore, the constitutional right to face the accuser is so fundamental to justice that denying this right renders this matter void and proof the proceeding was clearly prejudicial to Petitioner and essentially "a rigged game."

11. Walker refused to charge the Jury with the Petitioners affirmative defenses of, (1) Diplomatic Immunity, (2) lack of a contract with STATE OF TENNESSEE corporation, (3) failure to State a cause by which relief could be granted due to the indictment for a charged element that does not exist in law, (4) undisclosed all capitol letter plaintiff and defendant, (5) duress and (6) Necessity. "The Statute requiring that additional instructions desired by counsel be presented in writing, while mandatory, is not applicable where omitted charge concerns certain fundamental defenses, and supreme court will reverse a trial court for its failure to give one of such fundamental charges even though no special request was made at the trial. T.C.A. 40-2517, Monts v. State. 1964, 379 S.W.2d 34. 18 McCanless 171, 214 Tenn. 171.

The Constitution for the united States of America Republic states that, "In all cases affecting Ambassadors, the supreme Court **shall** have original jurisdiction... all treaties made, or which **shall** be made under the authority of the united States **shall** be the supreme Law of the Land; and the judges in every state shall be bound thereby" and "judicial officers... of the several states, **shall**, be bound by oath or affirmation, to support the Constitution." Therefore, the prejudicial and arbitrary acts of the said judge Walker and jurors denied my God given Rights and those guaranteed by the organic Constitution for the Republic including an Article III Section 2 supreme Court which has original jurisdiction for Ambassadors and where the Constitution and Treaties are the Common Law and therefore, the Law of the Land. Not the said judge Walker undisclosed form of court, the undisclosed Rules that regulate Walker or the undisclosed private corporate statutes Walker would apply or not apply as he liked to achieve his goal of denying Petitioner of his liberty. Petitioner never consented to any of them but they were forced upon him against his will. The fundamental fairness of the Law of the Land, the Common Law, requires a victim who is a live human being or a contract. This case has neither.

Therefore, by special appearance only, Petitioner, Ambassador Michael Parsons of the sovereign Tsilhqot'in Nation – Country of the Chilcotin, a live man under duress, without prejudice currently held against my will at the West Tennessee Detention Facility at Mason Tennessee demands as a matter of Right this undisclosed administrative tribunal or court to ORDER transfer of this matter to the Article III Section 2 court for a new trial if STATE OF TENNESSEE desires or an Acquittal of the false conviction of Felony Failure to Appear, T.C.A. 39-16-609, Arrest of Judgment and immediate release from confinement and return of all property taken from Petitioner and his family.

Under Duress Without Prejudice,

*Ambassador Michael Parsons, TSILHQOT'IN NATION – COUNTRY OF CHILCOTIN*

Autographed September 29, 2017

### Certificate of Service

Petitioner, Ambassador Michael Parsons of the sovereign Tsilhqot'in Nation - Country of the Chilcotin, hereby certify that the forgoing is true and correct to the best of my knowledge and that the forgoing has been given to the correctional officer for placement into the institutional mail system on this September 29, 2017 at the West Tennessee Detention Facility in Mason Tennessee and addressed to the 25th Judicial District Circuit Court for Tennessee at 1801 South College Street, Covington Tennessee [38019] and per Rule 49(d)(1) is deemed filed today September 29, 2017.

Under Duress Without Prejudice,

*Ambassador Michael Parsons, TSILHQOT'IN NATION – COUNTRY OF CHILCOTIN*

Autographed September 29, 2017

 

PO Box 115, Anahim Lake, BC, Canada V0L 1C0
Ph: 250-394-7042 or 250-305-8704

## *Tsilhqot'in Nation's Letter of Appointment to Tribal Membership*

Pursuant to the *Universal Supreme Court Act* section 15, Practice Directives of Chief Justice, Rule 3 and by virtue of Michael Wayne Parsons appointment as Associate Justice of the Universal Supreme Court of the Tsilhqot'in, full Tribal Membership to the sovereign Tsilhqot'in Nation of the sovereign Tsilhqot'in Territory, with all rights, privileges and responsibilities of the sovereign Tsilhqot'in Nation is hereby conferred. Full tribal membership is also hereby conferred upon the family of Michael Wayne Parsons as per Rule 3 of Practice Directives of the Chief Justice of the Universal Supreme Court.

This Tsilhqot'in Nation's Letter of Appointment authorizes and enables you and your family to travel freely without interference, obstruction or restraint across borders as an Internationally Protected Person having full Diplomatic Immunity and protections afforded under the *Vienna Convention of Diplomatic Relations*, the *Jay Treaty* and the *Constitution of the Tsilhqot'in Nation*.

It is hereby enjoined upon you as Associate Justice of the Universal Supreme Court and full Tribal Member of the Tsilhqot'in Nation to serve the Tsilhqot'in people with pride, devotion and sincerity, abiding by the laws and jurisdiction of the sovereign Tsilhqot'in Nation. We hereby congratulate you on your appointment as Associate Justice and therefore a full Tribal Member of the host Tsilhqot'in Nation and with great pleasure welcome you and your family as a permanent adopted relation!

Dated: December 13, 2015

Respectfully,

The Honourable Chief Justice of the
Universal Supreme Court of the Tsilhqot'in



https://ceac.state.gov/GenNIV/general/esigp/complete_done.aspx?no...

# U.S. DEPARTMENT OF STATE
## CONSULAR ELECTRONIC APPLICATION CENTER

Print Confirmation

Online Nonimmigrant Visa Application (DS-160)

## Confirmation

A A 0 0 6 N W 0 7 6

| | |
|---|---|
| Name Provided: | PARSONS, USCT CHIEF JUSTICE MICHAEL |
| Date Of Birth: | 05 MAY 1961 |
| Place of Birth: | MEMPHIS, UNITED STATES OF AMERICA |
| Gender: | Male |
| Country/Region of Origin (Nationality): | CHILCOTIN TSILHQOT'IN |
| Passport Number: | 0000 |
| Purpose of Travel: | AMBASSADOR OR PUBLIC MINISTER (A1) |
| Completed On: | 19 JAN 2017 |
| Confirmation No: | AA006NW076 |

Location Selected:

VAC
U.S. Consulate General
Vancouver
1075 West Pender Street
Vancouver, BC V6E 2M6.

Version 01.02.03

A A 0 0 6 N W 0 7 6

Please provide to:
Justice Michael Parsons
Fax# 308-995-3101

402-452-3... 
DIPL-PORT CUOTE

DEFENDANT'S
EXHIBIT 2
/3

EXHIBIT #6
pg 1
18/01/2017 9:04 PM



Office of Protocol
U.S. Department of State
Production Unit, State Annex 33
3507 International Place, N.W.
Washington, D.C. 20008-3034

RE:     Letter of Credence and Introduction of Ambassador Michael Parsons of the Chilcotin National
Congress of the Chilcotin to the Office of Protocol, U.S. Department of State

Greetings,

By letter of introduction, I am Stanley Stump Sr., the Grand Chief in the country of the Chilcotin. On
January 01, 2016, I appointed Michael Parsons as the Ambassador of the Chilcotin to the U.S.A. (See
attached letter from Hereditary Grand Chief Stanley Stump Sr., of the Chilcotin National Congress-
Country of the Chilcotin). At that time, his appointment was communicated to Secretary Rex Tillerson
and on January 19, 2017, the U.S. Department of State confirmed his A-1 VISA).

Ambassador Parsons has established our embassy in West Tennessee recognizing the U.S. as a signatory
to the Vienna Convention on Diplomatic Relations and specifically Article 39, the U.S. shall recognize
Ambassadors are, "entitled to privileges and immunities...from the moment when their appointment is
notified to the Ministry of Foreign Affairs or such other ministry as may be agreed." In the U.S., that
would be the Secretary of State. The sovereign country of the Chilcotin has existed for over a thousand
years and recently notification of the Declaration of the New Country of the Chilcotin was given to the
United Nations, Canada and the U.S. (See attached Declaration of the New Country of the Chilcotin).

In January 2017, while travelling on official business as the Ambassador of the Chilcotin National
Congress of the Country of the Chilcotin, Ambassador Parsons was detained in Nebraska by the FBI
whom do not recognize the Vienna Convention on Diplomatic Relations or Title 18 of the United States
Code section 1116(b)(2)(3)(4) or section 1201(a) recognizing that he is entitled to special protection
against attack upon his freedom or dignity, irrespective of recognition by the United States.

provide much-needed jobs for the people of the Chilcotin & Tennessee and the international buyer.

Therefore, I respectfully request recognition and acceptance of our Ambassador Michael Parsons as the Ambassador of the Country of the Chilcotin to the United States and full credence accorded to his official statements.

Sincerely,

Stanley Stump Sr., Hereditary Grand Chief of the Chilcotin National Congress and the Country of the Chilcotin,

Box 228, Hwy 20, Alexis Creek, BC V0L 1A0

Phone: (250) 394-7042

2



April 24, 2017

All Authorities of the United States of America

RE: Ambassador and Associate Chief Justice Michael Parsons

To Whomever It May Concern:

Ambassador and Associate Chief Justice Michael Parsons is a Tsilhqotin Tribal member and a member of the Chilcotin National Congress in the Country of Chilcotin (formerly British Columbia, Canada). Michael Parsons is not a US citizen.

Michael Parsons has diplomatic immunity based on the appointment to the position of Ambassador by Hereditary Grand Chief of the Tsilhqotin Nation, Country of Chilcotin, Stanley Stump, Sr. on January 01, 2016 and based on the Vienna Convention on Diplomatic Relations, Article 89, which states that upon appointment by the Country to the position of Ambassador, they are recognized and have diplomatic immunity.

Ambassador Michael Parsons has been exonerated of all prior convictions and charges from the United States, by the Universal Supreme Court of the Chilcotin which under the rules of reciprocity and the Constitution of the Chilcotin National Congress (www.universalsupremecourt.org) must be upheld by the United States and abroad.

Therefore, based on all of the above, I, Hereditary Grand Chief Stanley Stump, Sr. request the immediate release of Ambassador Michael Parsons from detention, in accordance with the Vienna Covention on Diplomatic Relations.


Hereditary Grand Chief Stanley Stump, Sr.

*Country Of Chilcotin*
Chilcotin National Congress

Authorized By:

Effective Date : JULY.01.2016



# Tsilhqot'in Identification

**Name: Michael Wayne Parsons**
**Status: Tribal Member**
**Position: Ambassador/Justice/ Diplomat**
**International Travel Rights: Jay Treaty/Internationally Protected Person**



DEFENDANT'S
EXHIBIT
NO.

AT THE U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

Michael Wayne Parsons
Petitioner

v.                                                          No. 2:22-cv-2247-MSN-tmp

UNITED STATES OF AMERICA,
STATE OF TENNESSEE
Respondent(s)

---

NOTICE OF OBSTRUCTION OF JUSTICE

PETITION FOR ORDER DIRECTING AGENTS OF RESPONDENT UNITED STATES OF AMERICA TO
CEASE AND DESIST ANY FURTHER OBSTRUCTIVE ACTS

---

By Special Appearance Only, petitioner, Ambassador Mike Parsons hereby serves NOTICE

of Obstruction of Justice by agent(s) of respondent UNITED STATES OF AMERICA.  Including;

1. On or about April 18, 2022 I was advised that the Clerk of this court mailed a
   Certified Copy of the Petition in this matter to me at the FCC-FORREST CITY LOW
   Federal Prison, but to date it has never been delivered.

2. On May 02, 2022 I authorized the prison to deduct and mail a check for $5.00 to
   the Clerk of this Court for the filing fee in this matter and on May 18, 2022,
   according to the Account Transaction printout, funds were withdrawn for that
   purpose but as of May 27, 2022, no check had been delivered to the Clerk so I was
   required to have my wife, Pat Parsons hand deliver the fee before the deadline.

Whereas these facts are a part of the Court Clerks records and according to the facts

in my affidavit herein attached and the Account Transaction printout supporting these

facts, the Agent(s) of respondent are engaged in a systematic manipulation of the mail

and thereby are Obstructing my access to redress of this matter in this court.  Therefore,

I respectfully MOVE this Court to issue and ORDER DIRECTING RESPONDENT TO CEASF AND

DESIST FURTHER OBSTRUCTIVE ACTS. (See Affidavit and Account Transaction Printout)

Respectfully submitted this 27th Day of May 2022.

Ambassador Mike Parsons, all rights and immunities reserved.
Tsilhqot'in Nation-Country of Chilcotin
c/oFCC-FORREST CITY LOW, #30237047
P.O. Box 9000
Forrest City, Arkansas [72336]

1 of 2

CERTIFICATE OF SERVICE

I, Ambassador Mike Parsons of the sovereign Tsilhqot'in Nation-Country of Chilcotin to the United States of America, do hereby certify that the foregoing;

NOTICE OF OBSTRUCTION OF JUSTICE
and
PETITION FOR ORDER DIRECTING AGENTS OF RESPONDENT UNITED STATES OF AMERICA TO
CEASE AND DESIST ANY FURTHER OBSTRUCTIVE ACTS

was placed into the institutional system for outgoing mail with the Unit W-A staff by placing this document into the mail box in the unit with 1st Class and Certified mail postage paid thereon this mailing and per Federal Rules, is deemed filed today this 27th day of May 2022. Be advised that the foregoing was mailed to the attention of the Clerk of the Court for the U.S. District Court for the Western District of Tennessee, Western Division at Memphis, 167 North Mail, Memphis Tennessee [38103].

Be advised that this Notice, Petition and Certificate of Service is not, and should not be construed as any form of waiver of any of my rights or immunities, including but not limited to diplomatic immunity as an ambassador of a foreign country and as an Internationally Protected Person.

Respectfully submitted this 27th day of May, 2022.

*ALL RIGHTS RESERVED*

Ambassador Mike Parsons, all rights and immunities reserved.
Tsilhqot'in Nation-Country of Chilcotin
c/o FCC-FORREST CITY LOW, #30237047
P.O. Box 9000
Forrest City, Arkansas [72336]

AFFIDAVIT of Ambassador Mike Parsons

I, Ambassador Mike Parsons of the sovereign Tsilhqot'in Nation-Country of Chilcotin hereby attest to the following facts I have witnessed and know to be true.

1. On or about April 18, 2022 I was advised that the Clerk of the U.S. District Court for the Western District of Tennessee, Western Division at Memphis mailed a Certified Copy of the Petition filed in the matter of Michael Wayne Parsons v. UNITED STATES OF AMERICA and STATE OF TENNESSEE, Case No. 2:22-cv-2247-MSN-tmp, to me at FCC-FORREST CITY LOW Federal Prison in Forrest City Arkansas.

2. As of May 27, 2022 I have not received the aformentioned Petition from the Clerk of the U.S. District Court for Case No. 2:22-cv-2247-MSN-tmp.

3. On May 02, 2022 I authorized FCC-FORREST CITY to deduct $5.00 from my account and forward it to the Clerk of the Court for the filing fee in the aforementioned case.

4. According to the TRULINCS Account Transaction printout, funds were available at the time I submitted the authorization to deduct $5.00 for the filing fee, however, according to the Account Transaction printout, the funds were not withdrawn for the check until May 18, 2022.

5. Due to the fact the check was never received by the Clerk of the Court in this matter, I was required to have my wife, Pat Parsons hand deliver the filing fee on May 27, 2022 to the Clerk of the Court in order to meet the deadline

6. Since arrival into the Federal Prison system I have experienced a systematic manipulation of the mail sent to me as well as my outgoing correspondence.

7. I have filed grievances with the prison as well as with the Inspector General with no response.

8. It is my experience that all of my correspondence, including diplomatic correspondence and legal mail is opened outside of my presence even though the correspondence is clearly marked *Diplomatic Correspondence* Vienna Convention on Diplomatic Relations Article 30.2, "His correspondence and papers shall likewise be inviolable." and designated as *Special/Legal Mail* and Open in the presents of the inmate only, as required by the Bureau of Prisons Program Statement.

9. Since the beginning of April, all of my request to date for a notary or a Case Manager to verify my signature on legal documents and affidavits has been denied by all of the Case Managers in the Unit I am assigned to for purposes of case load as well as the Unit Managers and the Associate Warden. As such, access to notarize those documents as well as this one has been denied and effectively obstructing my ability to access the court and government agencies and government officials for official business and redress of grievances.

FURTHER AFFIANT SAITH NOT     C ... ALL RIGHTS RESERVED.

Ambassador Mike Parsons
Tsilhqot'in nation-Country of Chilcotin
c/o FCC-FORREST CITY LOW, #30237047
P.O. Box 9000
Forrest City, Arkansas [72336]

# Federal Bureau of Prisons
## TRULINCS Account Transactions - Commissary
### Personal Inmate Information

**Inmate No: 30237047   Inmate Name: PARSONS, MICHAEL WAYNE        Available Balance: $54.90**

| Date | Reference # | Transaction Type | Sender Last name | Amount |
|------|-------------|------------------|------------------|--------|
| 05/25/2022 | TL0525 | TRUL Withdrawal | | -$2.00 |
| 05/25/2022 | 73 | Sales | | -$3.15 |
| 05/25/2022 | 72 | Sales | | -$32.35 |
| 05/25/2022 | TL0525 | TRUL Withdrawal | | -$2.00 |
| 05/23/2022 | TL0523 | TRUL Withdrawal | | -$2.00 |
| 05/23/2022 | 70159303 | Lockbox - CD | | $75.00 |
| 05/20/2022 | TL0520 | TRUL Withdrawal | | -$2.00 |
| 05/18/2022 | TL0518 | TRUL Withdrawal | | -$2.00 |
| 05/18/2022 | 29 | Sales | | -$26.50 |
| 05/18/2022 | 7175 | Court Fees | | -$5.00 |
| 05/18/2022 | 7175 | BP 199 Request - Released | | $5.00 |
| 05/16/2022 | TL0516 | TRUL Withdrawal | | -$2.00 |
| 05/11/2022 | 83 | Sales | | -$6.50 |
| 05/11/2022 | 82 | Sales | | -$5.15 |
| 05/11/2022 | 81 | Sales | | -$84.80 |
| 05/09/2022 | TL0509 | TRUL Withdrawal | | -$2.00 |
| 05/06/2022 | TL0506 | TRUL Withdrawal | | -$2.00 |
| 05/04/2022 | TL0504 | TRUL Withdrawal | | -$5.00 |
| 05/04/2022 | 70158001 | Lockbox - CD | WEBSTER | $100.00 |
| 05/02/2022 | 7175 | BP 199 Request | | -$5.00 |
| 05/02/2022 | TL0502 | TRUL Withdrawal | | -$2.00 |
| 04/29/2022 | TL0429 | TRUL Withdrawal | | -$2.00 |
| 04/29/2022 | TL0429 | TRUL Withdrawal | | -$2.00 |
| 04/29/2022 | 70157701 | Lockbox - CD | | $70.00 |